306 So.2d 457 (1975)
Martin J. NUNEZ, Jr., Individually and as Administrator of the Estate of his minor son, Martin J. Nunez, III
v.
ISIDORE NEWMAN HIGH SCHOOL and United States Fire Insurance Company.
No. 6566.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1975.
Evangeline M. Vavrick, New Orleans, and Elmer R. Tapper, of Tapper & McDougall, Chalmette, for Martin J. Nunez, Jr., plaintiff-appellant.
Edward P. Lobman and Jack M. Alltmont of Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, *458 for Isidore Newman High School and United States Fire Ins. Co., defendants-appellees.
Before REDMANN, BOUTALL and BEER, JJ.
BOUTALL, Judge.
This is an appeal from a judgment of the lower court dismissing plaintiff's suit for personal injuries to his minor son.
The facts are these: Plaintiff's son was a senior basketball player for St. Bernard High School. St Bernard had been invited to participate in the Isidore Newman School Invitational Tournament, an event held annually at the Newman gym around Christmas time. Admission is charged the spectators at the tournament and these revenues go entirely to Newman School. On December 20, 1968 St. Bernard was scheduled to play Country Day for third place in the tournament.
The weather conditions on the day of the game were very unseasonal for a December evening. It was hot, very humid and had rained earlier in the day. Due to the high humidity water had condensed on the floor of the Newman gym. Prior to the start of the game porters from the Newman School had mopped the floor and someone had turned on fans and heaters in an attempt to dry the floor.
The game was started on time and continued normally, except for the fact that several times Newman porters mopped some areas of condensation on and off the playing surface. At some point in the third quarter of the game plaintiff's son, Martin Nunez, III, jumped in the air attempting a lay-up shot and upon coming down he slipped and fell, seriously injuring his back. This suit was brought to recover for those injuries.
The record in this case is voluminous, in all nineteen witnesses were called to testify. The record reveals contradictory testimony on the one essential point in controversythe condition of the floor during the St. Bernard-Country Day game.
Plaintiff's witnesses basically testified that the floor was wet and slippery as early as the warm-up period before the game and this wet condition worsened as the game progressed. This position is strengthened by the fact that the second game to be played that night was called off because of moisture on the floor. Plaintiff's witnesses fall into two classes; basketball players for St. Bernard High School and spectators at the game, comprised of Nunez's relatives, teachers and coaches.
Defendant's witnesses testified that the floor was in a playable condition throughout the game and that only late in the fourth quarter did any water begin to seriously accumulate. This accumulation of water was not on the playing court itself but off the court by an entrance to the gym. Defendant's witnesses also fall into two classes: the game referees and Newman personnel, the principal and athletic director.
Plaintiff contends that Martin Nunez III was a business invitee of Newman, since Newman was deriving revenue from his participation and presence at the gym that night. The defendant does not seriously contest this assertion and we agree with plaintiff's view of Nunez's status.
Plaintiff further maintains that as a business invitee Nunez is owed a certain duty by Newman and that Newman has breached that duty. A fair statement of that duty is: An owner or occupier of lands or buildings must take reasonable and ordinary care to protect invitees from any dangerous conditions on the premises. He must also warn them of any latent dangerous defects in the premises and inspect the premises for any possible dangerous conditions of which he does not know. Prosser, Law of Torts, 4th Ed., sec. 61. This statement of the duty Newman owed *459 presupposes one important fact which the trial court must have found to be lacking the condition must actually be "dangerous". Unless a condition of the building can be termed dangerous then this duty owed to invitees will never arise; to hold otherwise would mean that the building owner was the insurer of his patron's safety.
The testimony of the witnesses actually on the floor and moving about is clearly contradictory. Nunez and the other St. Bernard basketball players claim the floor was wet and slippery throughout the game. Most claim to have complained to their coach and even to the referees, about this condition. The referees claim the floor was "definitely playable", that they had no trouble with their footing and no one brought the floor conditions to their attention until the second game was about to start.
The most significant witness other than those actually involved in the game was the St. Bernard basketball coach, Mr. Joseph Ernst. Mr. Ernst has been a coach of high school athletics for many years, he was on the bench that night immediately adjacent to the playing court and yet he never raised the question of stopping the game due to the floor's condition. He does not remember anyone else, including the referees and Country Day's coach, questioning the floor's condition. We consider the following excerpt of his testimony to be highly persuasive on the issue of the dangerous condition of the floor:
"Q. If you thought the conditions were so bad that the safety of your players was at stake, you would have done something like talk to the officials or the other coach or somebody, wouldn't you?
"A. Yes.
"Q. Who would you have gone to?
"A. I would have talked to the officials, I guess.
"Q. When you say talk to the officials, you are talking about the two referees officiating the basketball games, correct?
"A. We had talked about this when they were mopping the floor up when they took time out. I don't know who stopped it. I think the officials stopped it the first time to try and get the floor to be mopped.
"Q. Coach Ernst, when you say talked about this, you are just talking about the floor being slippery, and you are not talking about calling the ball game, are you?
"A. No.
"Q. So that I understand it correctly, if you had thought the conditions were so hazardous as to warrant cancelling the rest of the game, you would have gone to one or both of the officials, the referees working that ballgame, is that correct?
"A. Right."
Newman has the duty to employ reasonable care in discovering defects on its premises. This duty generally cannot be delegated to others, however, we are compelled to consider all the circumstances of the case in determining if Newman has acted reasonably.
Present at the gym that night were the two game referees and the two coaches of the teams playing. These four men were men of great experience in high school athletics and each had some authority over the game and players. Mr. Frank Spruiell, the Commissioner of the Louisiana High School Athletic Association and Mr. Charles Meyers, Assignment Secretary for the Greater New Orleans Basketball Association, each testified that the referees have complete control of a basketball game from 30 minutes before a game starts until the final score is recorded in the scorebook. The referees are also responsible for inspecting and approving the playing conditions. The coaches of the teams have, of course, authority over the players *460 actions and a corresponding obligation to look out for their welfare.
We make no determination as to whether Newman did or could delegate their duty to the referees and coaches. However, we consider most significant the fact that none of these four men considered the floor's condition serious enough to even discuss the possibility of cancelling the game. The actions of these four men reflects upon the actions of Newman and as such we cannot say Newman acted unreasonably in preparing and maintaining its premises for the playing of a basketball game. We hold that whatever the precise condition of the gym floor was that night it could not be considered a dangerous condition.
For the foregoing reason we find it unnecessary to discuss defendant's contentions of contributory negligence and assumption of the risk. We affirm the judgment of the trial court at appellants' cost.
Affirmed.