PAUL A. BONIN, Judge.
11 Jennifer Hooper was seriously injured when she, while using crutches, stepped through rotten floorboards in the area of a small, preexisting hole on the porch of her leased home. She sued her landlords, Val and Mary Brown, and their insurer, Encompass Property and Casualty Company for damages due to her injuries. The Browns filed a motion for summary judgment in which they asserted that because the rotten condition of the porch’s floorboards was, and had been, actually known by Ms. Hooper and indeed was open and obvious to everyone using the porch, they owed her no duty and were entitled to a dismissal with prejudice of her lawsuit against them. The trial judge denied the motion primarily on the basis that genuine issues of material fact exist as to the cause of Ms. Hooper’s fall and whether the hole was open and obvious to all.
The Browns timely filed an application for supervisory review of the interlocutory ruling. Applying the Herlitz considerations,[1] we granted a writ of Rcertiorari, directed that the full trial court record be filed with us, and afforded the parties an opportunity for further briefing and oral argument. On our de novo review of the denial of the Browns’ motion for summary judgment, we conclude that the trial judge *998 correctly denied the Browns’ motion for summary judgment and accordingly affirm her ruling.[2]
We explain our decision in detail below.
I
We first discuss this matter’s history. Ms. Hooper filed suit against the Browns and their insurer on February 14, 2014. In her petition, Ms. Hooper alleges that she signed a lease with the Browns in January 2011 to rent an apartment located at 716 Weiblan. Place in New Orleans, Louisiana. The lease term ran from February
1. 2011 through January 31, 20Í2. Ms. Hooper alleges that she moved into the apartment shortly thereafter and that she renewed the lease and continued to reside there until September 2013. Ms. Hooper’s petition also alleges that at the time she initially moved in, the Browns pointed out to her that the apartment’s front porch contained a defect in that a portion of one of its boards had rotted out leaving a hole. Ms. Hooper alleges that the Browns promised, yet failed, to fix the hole' several times over the course of her tenancy.
Ms. Hooper’s petition further asserts that, in the fall of 2013, she injured her leg and was forced to walk with the assistance of crutches. She also claims that on |sSeptember 11, 2013, she was walking up the stairs leading to the porch when she placed the base of one crutch near the hole. The base of the crutch broke through the rotten wood and became lodged in the hole, causing her to fall. Ms. Hooper alleges' that as a result she suffered a fracture of her right femoral neck.
The petition asserts that Ms, Hooper’s injuries were caused by the Browns’ failure to: 1) properly maintain the premises; 2) adequately inspect the premises; and 3) warn her of an unreasonably dangerous condition. Ms. Hooper, accordingly, claims that the Browns and their insurer are liable to her for damages.
On December 17, 2014, the Browns filed a motion for summary judgment stating that Ms. Hooper’s accident was caused when she placed the base of her crutch into the hole on the porch. Because the hole was a condition that was open and obvious to all, the Browns asserted, they had no duty to warn Ms. Hooper about it, or protect her from this harm. The Browns, accordingly, argued that since Ms. Hooper could not establish the duty element of her action, and there was no genuine issue of material fact, they were entitled to a judgment of dismissal as a matter of law.
In support of their motion, the Browns submitted Ms. Hooper’s petition for damages, a photocopied photograph of the porch taken in April of 2011, and excerpts from several deposition transcripts. Ms. Hooper filed- an opposition memorandum on January 21, 2015. She argued in the trial court that the Browns’ motion should be denied because there are genuine issues of material fact as to whether the hole was open and obvious to all. She, similarly, asserted that a |4genuine issue of material fact exists as to whether her fall was caused by the placement of her crutch in the hole or whether it was the result of rotten wood giving way beneath the crutch.[3] In 'support of her opposition, Ms. Hooper attached excerpts from several deposition transcripts, several additional photocopies of photographs purporting to *999 show the hole, and an affidavit that she signed. In response, the Browns filed a supplemental memorandum on January 29, 2015, and attached excerpts from the deposition transcript of George Hero, their expert architect.
The trial court was confronted, therefore, with whether a genuine issue of fact existed with respect to the cause of Ms. Hooper’s fall and whether the facts established that the hole in the porch was a condition that was open and obvious to all. The parties argued the merits of the Browns’ motion before the trial court on January 30, 2015. The trial judge denied the Browns’ motion and recognized, over the course of oral argument, several genuine issues of material fact. For example, the trial judge observed that the cause of the accident was uncertain: “But let me ask you something. When the crutch went into it, did the wood just rot out over time, which caused the hole to get bigger or did the wood get soft as a result of it? Because you could see something that i[s] open and obvious as a hole, but if the wood around it got softer and rotted out as a result of it, then that is not really open and obvious.... ” Later, as she was denying the motion, the trial judge also noted [¡/‘that there exists a genuine issue of material fact as to whether or not that hole is open or obvious.” After their motion was denied, the Browns sought timely supervisory review of the trial judge’s ruling.
II
We now examine the statutory law and jurisprudence which governs our review of the Browns’ motion for summary judgment, sets out the general contours of Louisiana’s law on unreasonably dangerous conditions found within buildings, and interprets the “open and obvious to all” doctrine.
A
We apply a de novo standard of review in examining trial court rulings on summary judgment motions. See Hare v. Paleo Data, Inc., 11-1034, p. 9 (La.App. 4 Cir. 4/4/12), 89 So.3d 380, 387. We, accordingly, use the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Id. A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966 B(2); Catahoula Parish School Board v. Louisiana Machinery Rentals, LLC, 12-2504, pp. 8-9 (La.10/15/13), 124 So.3d 1065, 1071.
On a motion for summary judgment, the burden of proof remains with the movant. La. C.C.P. art. 966 C(2). However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of | ^factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966 C(2). If the opponent of the motion fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. Id.
B
Ms. Hooper’s petition claims that the Browns are liable to her for allowing an unreasonably dangerous condition to persist in the porch and for failing to warn her about it. Ms. Hooper’s claims are thus rooted in La. Civil Code arts. 2317 and 2322.[4] Article 2317 provides that we “are *1000 responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.” Article 2322 “specifically modifies liability under Article 2317 with respect to the owner of a ruinous building or defective component part of that building.” Broussard v. State of Louisiana, through the Office of State Buildings, 12-1238, p. 8 (La.4/5/13), 113 So.3d 175, 182.
|7Article 2322 provides that “[t]he owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction.” This article further indicates that such an owner “is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.” Id. Under this article a plaintiff must prove the following elements to hold the owner of a building liable for the damages caused by the building’s ruin or a defective component: 1) ownership of the building; 2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect; 3) the damage could have been prevented by the exercise of reasonable care; 4) the defendant failed to exercise such reasonable care; and 5) causation.
See La. Civil Code art. 2322; Broussard, 12-1238, p. 8, 113 So.3d at 182-183.
The, gateway question, therefore, is whether the ruinous building, or a defective component part, creates an unreason-able risk of harm. See Entrevia v. Hood, 427 So.2d 1146, 1148-1149 (La.1983). The Supreme Court has described this question as “a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts.” Reed v. Wal-Mart Stores, Inc., 97-1174, p. 4 (La.3/4/98), 708 So.2d 362, 364. “As a mixed question of law and fact, it is the fact-finder’s role — either the jury or the court in a bench trial — to determine whether a defect is unreasonably dangerous.” Broussard, 12-1238, p. 9, |s113 So.3d at 183. Thus, whether a defect presents an unreasonable risk of harm is “a matter wed to the facts” and must be determined in light of the facts and circumstances of each particular case. ' Id.
To aid the trier-of-fact in making this unscientific, factual determination, the Supreme Court has adopted a risk-utility balancing test, wherein the fact-finder must balance the gravity and risk of harm against individual societal rights and obligations, the social utility of the thing, and the cost and feasibility of repair. See, e.g., Broussard, 12-1238, pp. 9-10, 113 So.3d at 184; Reed, 97-1174, p. 5, 708 So.2d at 365. Specifically, the Supreme Court has distilled the risk-utility balancing test to a consideration of four pertinent factors: 1) *1001 the utility of the complained-of condition; 2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; 3) the cost of preventing the harm; and 4) the nature of the plaintiffs activities in terms of its social utility or whether it is dangerous by nature. See, e.g., Broussard, 12-1238, p. 10, 113 So.3d at 184; Dauzat v. Curnest Guillot Logging, Inc., 08-0528, p. 5 (La.12/2/08), 995 So.2d 1184, 1186-1187.
C
The primary thrust of the Browns’ motion for summary judgment—that the hole in the porch was open and obvious to all—implicates the second prong of the risk-utility, inquiry, which focuses on whether the dangerous or defective condition is obvious and apparent. See Bufkin v. Felipe’s Louisiana, LLC, 14-0288, p. 4 (La.10/15/14), 171 So.3d 851, 854-55, 2014 WL 5394087. Under Louisiana law, a defendant [ flgenerally does not have a duty to protect against an open and apparent, or rather open and obvious, hazard. See, e.g., Bufkin, 14-0288, p. 4, 171 So.3d at 854-55; Broussard, 12-1238, p. 10, 113 So.3d at 184. In order for a hazard to be considered open and obvious, the Supreme Court has consistently stated that the hazard should be one that is open and obvious to all, ie., everyone who may potentially encounter it. See, e.g., Caserta v. Wal-Mart Stores, Inc., 12-0853, p. 1 (La.6/22/12), 90 So.3d 1042, 1043; Dauzat, 08-0528, p. 4, 995 So.2d at 1186.
Even though the “open and obvious to all” doctrine “suggests a disguised application of contributory negligence or assumption of the risk, when the risk is open and obvious to everyone, the probability of injury is low and the thing’s utility may outweigh the risks caused by its defective condition.” Broussard, 12-1238, pp. 10-11, 113 So.3d at 184. If the facts and circumstances of a particular case show a that dangerous condition should be open and obvious to all who encounter it, then the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. See, e.g., Broussard, 12-1238, p. 11, 113 So.3d at 184; Caserta, 12-0853, p. 1, 90 So.3d at 1043; Jimenez v. Omni Royal Hotel, 10-1647, p. 9 (La.App. 4 Cir. 5/18/11), 66 So.3d 528, 533. The open and obvious to all inquiry therefore “focuses on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim’s actual or potentially ascertainable knowledge.” Broussard, 12-1238, p. 18, 113 So.3d at 188.
In discussing the “open and obvious to all” doctrine, the Supreme Court has noted that “the analytic framework for evaluating an unreasonable risk of harm is Improperly classified as a determination of whether a defendant breached a duty owed, rather than a determination of whether a duty is owed ab initio.” Broussard, 12-1238, pp. 11-12, 113 So.3d at 185. And, it “is axiomatic that ... whether a defendant has breached a duty owed is a question of fact.” Broussard, 12-1238, p. 12, 113 So.3d at 185.
Within the context of summary judgment practice “our jurisprudence does not preclude the granting of a motion for summary judgment in cases where the plaintiff is unable to produce factual support for his or her claim that a complained-of condition or things is unreasonably dangerous.” Allen v. Lockwood, 14-1724 (La.2/13/15), 156 So.3d 650, 653. In such a procedural posture, “the court’s obligation is to decide ‘if there [is] a genuine issue of material fact as to whether the [complained-of condition or thing] created an unreasonable risk of harm....’” Allen, 13-1724, 156 So.3d at 653, citing Broussard, 12-1238, p. 9, 113 So.3d at 184, n. 5.
*1002 III
We next examine the relevant facts as presented by the parties to the trial judge. Both the Browns and Ms. Hooper introduced photocopies of photographs which purport to show the hole, the porch, and Kenneth Brown’s initial repair work. The bulk of the evidence introduced by the parties, however, consists of excerpts from deposition transcripts.
Both the Browns and Ms. Hooper introduced portions of Ms. Hooper’s deposition transcript. In these selections, Ms. Hooper testified that when she first [^visited the apartment, Mrs. Brown pointed out to her a hole on a board in the front porch and noted that it would be fixed by her son Kenneth. The hole, however, was still there two weeks later when she moved in. Two or three weeks after she moved in, Ms. Hooper again mentioned the existence of the hole to Mrs. Brown, who again indicated that it would be repaired. Ms. Hooper testified that, at some point, Kenneth used a filler to fill the hole, but that his repair only covered a portion of it. Ms. Hooper also testified that the Browns would stop by occasionally to landscape and address issues that she had with the apartment and that, on several occasions, she asked both Mr. and Mrs. Brown to have the hole repaired.
She also testified that “a month or two” before her fall she complained about the hole to Kenneth and that he indicated that he would take care of it. Ms. Hooper stated that people visiting her home also noticed the hole on the porch prior to her accident. She described the hole as a “decent sized hole” that “didn’t need to be pointed out.” She also testified that the hole was visible and obvious. Ms. Hooper testified that the board was still broken when she fell on the front porch, having never been fixed by Kenneth. She also testified to thinking that the board may have rotted in the months prior to the incident.
Ms. Hooper learned in August 2013 that she had a stress fracture in her right leg. A sports therapy doctor recommended that she use crutches to walk. Ms. Hooper testified that she had gone up and down, the front steps to the porch on crutches about twenty times prior to the accident. As for the accident itself, Ms. Hooper stated that as she was walking up the front porch steps, she put the left lii>crutch on the porch, which was initially solid.[5] She specifically denied putting the base of the crutch into the hole. Ms. Hooper further stated that when she put her weight on the crutch it went through the wood and into a hole, which caused her to fall. She testified that when she fell, her right knee hit the top step closest to the porch. When her knee hit the cement step, Ms. Hooper testified to hearing and feeling a “snap.” She later learned that she had broken her right femoral neck bone. Ms. Hooper was subsequently taken by ambulance to Tulane University Hospital, where she underwent surgery to repair the fracture.
In opposition to the Browns’ motion, Ms. Hooper also attached an affidavit wherein she asserts, among other things, that Mrs. Brown, in her initial showing of the apartment, acknowledged the existence of the hole and stated that she intended to have it repaired. Ms. Hooper likewise alleged that the Browns promised several times over the course of her tenancy to repair the hole. She also averred that she never inspected the porch in an effort to make a determination of the integrity of the board surrounding the hole before or after she moved into the rental property and that she never crawled under the house to in *1003 spect the issues related to the hole in the porch.
The Browns also introduced several selections from the deposition transcript of Ms. Hooper’s friend, Karla Campo. Ms. Campo testified that she had been to the apartment numerous times over the years that Ms. Hooper lived there. She stated that the first time she visited the apartment she noticed paint coming off a 11shole on the top of the porch’s steps. She testified that she and Ms. Hooper knew that the hole was there and that they would sometimes sweep debris or dust into the hole when they cleaned the porch. She also noted that she knew that she had to be careful when walking on the porch in high heels.
In connection with her opposition, Ms. Hooper introduced several selections from the deposition transcripts of the Browns and their son Kenneth. Mr. Brown testified that he bought for investment pur•poses the building which held Ms. Hooper’s apartment from his nephew after Hurricane Katrina.[6] He stated that he and his wife managed the property and had never employed a third party to do so. He noted that over the years he would drive by the apartment building, on average, twice a week. Sometimes he would merely drive by to view the property, while other times he would stop to cut the grass or perform small repairs to the building. During all this time, and over all these visits, he never noticed the hole or any kind of problem with the porch.
Mr. Brown testified that his wife showed Ms. Hooper the property before she rented it. He was unaware if Ms. Hooper told his wife anything about any issues related to the porch. Mr. Brown nevertheless testified that his son Kenneth made repairs to the porch before Ms. Hooper moved in, but did not do any other repairs during the span of Ms. Hooper’s tenancy. He testified that he first became aware of the hole in the porch while inspecting the property after Ms. Hooper’s accident, but before a new tenant moved in. Although he testified to viewing the 114hole, he was unable to describe the size of the hole or the condition of the board. He stated that Kenneth again fixed the porch after Ms. Hooper moved out. He assumed that Kenneth replaced the board with the hole in it although he never took any pictures of Kenneth’s repairs.
Mrs. Brown testified that prior to Ms. Hooper’s renting of the property she noticed that there were “little splinters” on one of the porch’s boards that had to be fixed. Nevertheless, Mrs. Brown stated that she could not see a hole near the splintered area of the board. She stated that Kenneth repaired the issue, but she did not know what he did because she knew “he would do it right.” She did not inspect the porch after the repairs, nor did she take pictures. Mrs. Brown testified that she never spoke to Ms. Hooper about the splintered board at the time she showed Ms. Hooper the apartment because the porch had already been repaired. She likewise testified that she did not discuss the condition of the porch with Ms. Hooper again until the September 2011 accident. She also noted that Ms. Hooper never complained to her at all about the state of the porch.
Mrs. Brown admitted to visiting the apartment several times a year to work in the yard or help her husband with routine maintenance but stated that she never had noticed any holes in the front porch. She stated that she did not know that there was an actual hole in the porch until after Ms. Hooper’s accident. Mrs. Brown also referred to a printed copy of one text message, which is not attached to this *1004 Court’s record, wherein Ms. Hooper stated to her that she “fell in the hole on your porch.”
hfiKenneth Brown testified that his parents relied upon him to make repairs to their building. He stated that prior to Hurricane Katrina he never had occasion to replace any of the boards on the porch. He also noted that the property received five feet of water as a result of Hurricane Katrina. While storm-related damage required him to make a lot of repairs to the property, he testified that the front porch did not need any work other than a new coat of pain.
Kenneth also stated that prior to Ms. Hooper’s tenancy he patched one board on the porch because it contained “some rot.” He testified that his parents did not direct him to make this repair. Rather, he noticed the problem and fixed it on his own initiative. He also testified that the board, at that time, had a hole in it. He noted that the hole was not visible from the top of the porch, but he could see a pinhole of light coming through the board when he went underneath the porch for repairs. He also testified that the rotted area was about the size of a golf ball, which he repaired by screwing a small board to the underside of the porch directly below the hole. He then “used a hardening product and spackled it into the hole.” He stated that the piece of wood he used to cover the hole and the rotted area was about five inches long and a half an inch thick. He determined that the boards surrounding the rotted area were secure by hitting them with a screwdriver. He stated that he did not take any pictures of this repair.
Kenneth also testified that he would go to the property once every three weeks to cut grass and had gone inside the apartment a few times to address several of Ms. Hooper’s repair requests. He stated that the majority of the times he |1fiwent inside the property he used the back door because that is where the keys were hidden: He did not recall seeing a hole in the front porch board after he had repaired it and was unaware of any issue with the porch until after Ms. Hooper had moved out.
Kenneth further testified that that he made additional repairs to the porch between the times that Ms. Hooper vacated the apartment and the new tenant moved in. He stated that at this point in time the hole was larger and that he removed and replaced a six-inch section of board. Kenneth estimated that about three inches of this six-inch section of board were rotting.
The Browns also introduced several selections from the deposition transcript of George Hero, their expert architect. Upon viewing a photograph taken of the hole in August of 2013, Mr. Hero opined that the hole would have been visible to anyone. He testified that considering that Ms. Hooper had traversed the steps with crutches numerous times in the past and knew of the existence of the hole “it’s common sense that she would absolutely know where it was and she could have avoided it.” On the other hand, when asked whether “it’s common sense that she would have expected it to collapse,” Mr. Hero answered, “[n]o,” given that it did not collapse the other times she walked across the board. Mr. Hero also testified that Kenneth Brown used an “adequate” method to repair the hole in 2011, but he refused to characterize it as the “best” method.
JiilV
In this Part we examine the evidence in light of the previously discussed law and conclude, as did the trial judge, that genuine issues of material fact exist that preclude summary judgment at this time.
First the evidence indicates a genuine issue of material fact concerning the mechanics of the accident. The Browns *1005 assert that the facts establish that Ms. Hooper’s fall occurred after her crutch became lodged in the hole, which caused her to fall. The hole, the Browns argue, was the unreasonably dangerous condition which caused Ms. Hooper’s fall. The evidence in the record before us, however, presents several differing accounts of the accident and points to two differing potential unreasonably dangerous conditions.
First, Mrs. Brown testified that Ms. Hooper texted her shortly after the accident and claimed that she “fell in the hole on your porch.” On the other hand, Ms. Hooper testified that the accident happened when she placed the base of her left crutch on one of the porch’s boards:
Q. Well, something was different because you fell. What was different that made you fall whereas you were able to do it before without falling?
A. When I went up the steps, the crutch went on the porch. It was solid when I went in and then it just went in from there.
Q. So of all that area in the porch, that crutch you put directly in that hole?
lisA. No.
Later, Ms. Hooper reiterated her testimony that the porch gave way beneath her weight:
Q. How did you fall? What made you fall? A. The crutch falling into — I guess breaking and going into the hole.
Q. Breaking, what broke?
A. If I put the crutch on solid and somehow it still fell, I’m assuming it fell into the hole.
In response, the Browns also suggest that the accident was caused by Ms. Hooper’s inadvertence and point to testimony in her deposition where she admits that “she was not looking where she placed the crutch, does not actually know where it landed, and she does not know if the incident made the hole bigger.”[7]
There is, accordingly, a genuine issue of material fact as to whether Ms. Hooper’s accident was caused by, or some combination of, a hole in the porch, rotten wood within one plank of the porch, or her own failure to see what she should have seen. The resolution of this issue is largely dependent upon how a fact-finder credits Ms. Hooper’s testimony because she was the only witness to this accident. Such a determination clearly calls into account Ms. Hooper’s credibility. |18It is axiomatic that a court may not make credibility decisions on a motion for summary judgment. See Hutchinson v. Knights of Columbus, Council No. 5747, 03-1583, p. 8 (La.2/20/04), 866 So.2d 228, 234.
We next observe that even if the facts showed unmistakably that Ms. Hooper’s fall was- caused by her crutch being placed in the hole, the record reveals a genuine issue of material fact as to whether the hole itself was open and obvious to all who may potentially encounter it. As the Supreme Court has noted, “in order to be open and obvious, the risk of harm should be apparent to all who encounter the dangerous condition.” Broussard, 12-1238, p. 17, 113 So.3d at 188. Moreover, the “open and obvious inquiry thus focuses on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim’s actual or potentially ascertainable knowledge.” Broussard, 12-1238, p. 18, 113 So.3d at *1006 188. In determining whether a condition is open and obvious to all the fact-finder should focus on “the obviousness and ap-parentness of the complained of condition” because “it is improbable that a potentially dangerous condition which is observable to all will cause injuries to an individual who exercises reasonable care.” Pitre v. Louisiana Tech University, 95-1466, 95-1487, p. 12 (La.5/10/96), 673 So.2d 585, 591.
The record reveals that while many people encountered Ms. Hooper’s apartment frequently, not all were aware of the hole. Ms. Hooper testified clearly that she was aware of the hole's presence from the moment she first visited the apartment. Similarly, Ms. Campo testified that she too was aware of the hole as a l^result of her frequent visits to Ms. Hooper’s apartment. On the other hand, Mr. Brown, despite testifying that they he visited the property on a weekly basis, denied any knowledge of the hole until after Ms. Hooper’s accident. Mrs. Brown testified that she frequently visited the property and worked on the properties’ yard and flower beds, some of which, as shown by photographs in the record, are near the porch. She, nevertheless, testified that she was unaware of any hole in the porch until after the accident. Kenneth Brown testified to performing numerous repairs to the property after his parents bought the property. He also testified to being aware of a small hole in the porch, which he claimed to have fixed prior to Ms. Hooper’s arrival. He, however, denied knowing about any other hole in the porch until after Ms. Hooper’s accident. It stands to reason, therefore, that if all the people who actually encountered the property failed to notice the hole, then there is a genuine issue of material fact as to its openness and apparentness to all who may potentially encounter it. See Bufkin, 14-0288, p. 6, 171 So.3d' at 856— (“In order for an alleged hazard to be considered obvious and apparent, this court has consistently stated the hazard should be one that is open and obvious to everyone who may potentially encounter it.”)
We further observe that the record does not clearly delineate the size of the hole. We think this ambiguity important given that the open and obvious to all inquiry focuses, among other things, on the “obviousness and apparentness” of the injury causing condition. See Pitre, p. 12, 673 So.2d at 591. No party has offered anything resembling a precise measurement of the hole. Mrs. Brown, while |2i denying any pre-accident knowledge of the hole, testified that some of the porch’s boards were “splintered.” Kenneth Brown testified that when he initially worked on the porch he discovered an opening in the porch about the size of a “pinhole.” And his excepted deposition transcript in the record before us does not indicate his estimation of the size of the hole at the time he worked on the porch after Ms. Hooper’s fall.
Ms. Campo, on the other hand, testified that she and Ms. Hooper could sweep debris into the hole, although she provided no estimation of its size. Ms. Hooper stated that the hole was clearly visible but likewise did not estimate the hole’s size. The parties also introduced several photocopies of photographs which purport to show the hole, the porch, or Kenneth’s initial repair work. These photocopies, however, are not of sufficient quality to clearly delineate the scope of the hole or the porch’s apparent condition.
Whether the hole in the porch was open and obvious to all is clearly a genuine issue of material fact given that three of the five people who testified to encountering the property during the time of Ms. Hooper’s tenancy claimed ignorance of the hole’s existence. Further, there is varying testimony, and thus a genuine issue of material fact, as to the actual size of the *1007 hole in the porch. Resolution of these factual disputes will, again, largely be dependent upon the factfinder’s estimation of the evidence and the witnesses’ credibility. See Hutchinson, 03-1533, p. 8, 866 So.2d at 234. Because the cause of Ms. Hooper’s accident and the openness and apparentness of the hole are questions “wed to the facts,” the trial [¡.¿judge correctly concluded that genuine issues of material fact precluded the granting of the Browns’ motion for summary judgment. Broussard, 12-1238, p. 9, 113 So.3d at 183.
DECREE
Because the trial judge correctly denied the Browns’ motion for summary judgment, we accordingly affirm her ruling. We also lift the stay which issued in these proceedings on March 5, 2015.
WRIT GRANTED; RULING AFFIRMED

. The Herlitz factors are applied by an appellate court in considering an "arguably incorrect” trial-court ruling which does not require the resolution of a factual dispute, and which, if reversed, would terminate the litigation. See Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981) (finding confluence of factors which "dictates” consideration of and decision on an application for supervisory writs, and implying failure to exercise discretion under circumstances is an abuse of intermediate appellate court's discretion). The primary consideration of Herlitz is that review and decision by us would terminate the litigation. See Ramirez v. Evonir, LLC, 14-1095, p. 3 (La.App. 4 Cir. 4/9/15), 165 So.3d 260, 263.

. The insurer did not join in the motion for summary judgment and is not before us on , supervisory review.

. All copies of the parties’ respective photographs in our record have been reproduced in black and white. The photocopies provided to the trial judge by the parties were reproduced in color. The parties have produced to us, and we have accepted into our record, color photocopies of these photographs.

. In her memoranda to this Court, Ms. Hooper also argues that her claims sound in strict liability under La. Civil Code art. 2696 and that articles 2315, et seq., do not control the *1000 disposition of her case. See Montecino v. Bunge Corp., Inc., 04-875, pp. 4-5 (La.App. 5 Cir. 2/15/05), 895 So.2d 603, 606-607. The Browns, on the other hand, respond that liability under the terms of their lease with Ms. Hooper must be based on a finding of negligence. None of the Browns’ leases with Ms. Hooper were introduced into evidence in support of their motion for summary judgment. We also note that Ms. Hooper did not raise strict liability as an issue before the trial court in opposition to the Browns' motion. Generally, issues not raised in the trial court will not be given consideration for the first time on appeal. See Rule 1-3, Uniform Rules-Courts of Appeal; Scott v. Zaheri, 14-0726, p. 14 (La.App. 4 Cir. 12/3/14), 157 So.3d 779, 788. Therefore, we will not consider Ms. Hooper's strict liability arguments. We can, however, dispose of this matter on other grounds.

. She stated that she did not use the rear entrance steps to the house, which had railings, because she could not use the rails and keep her hands on the crutches.

. The property consists of two rental units.

. A pedestrian has a duty to see that which should be seen, and is bound to observe his course to see if his pathway is clear. See Eisenhardt v. Snook, 08-1287, p. 7 (La.3/17/09), 8 So.3d 541, 545, citing Carr v. City of Covington, 477 So.2d 1202, 1204 (La. App. 1st Cir. 1985). It is worth reiterating at this point that while Mr. Hero, the Brown’s expert architect, testified that the hole should have been clearly visible to anyone, a person walking across the porch should not have expected any portion of it to collapse.