ANN MARIE CARRERO, ELIZABETH ANN CARRERO AND NANCY CARRERO VINCI

VERSUS

MANDINA'S, INC. D/B/A MANDINA'S RESTAURANT

\* NO. 2019-CA-0158

\* COURT OF APPEAL

\* FOURTH CIRCUIT

\* STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-08118, DIVISION "M"
Honorable Paulette R. Irons, Judge

\* \* \* \* \* \*

**JUDGE SANDRA CABRINA JENKINS**

\* \* \* \* \* \*

(Court composed of Judge Terri F. Love,
Judge Roland L. Belsome, Judge Sandra Cabrina Jenkins)

*LOVE, J., CONCURS WITH REASONS*
*BELSOME, J., CONCURS IN THE RESULT*

Perry R. Staub, Jr.
Mark E. Van Horn
Matthew S. Foster
TAGGART MORTON, L.L.C.
1100 Poydras Street, Suite 2100
New Orleans, LA 70163-2100

    COUNSEL FOR PLAINTIFFS/APPELLANTS


Thomas G. Buck
Brett W. Tweedel
BLUE WILLIAMS, L.L.P.
3421 North Causeway Boulevard, Suite 900
Metairie, LA 70002-3760

    COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED**

**AUGUST 7, 2019**

This action stems from a fatal fall by an elderly customer, Mrs. Marie Carrero, as she exited Mandina's Restaurant using a ramp that serves as a main entrance/exit to the restaurant on Canal Street in New Orleans. Mrs. Carrero's daughters, Ann Marie Carrero, Elizabeth Ann Charlotte Carrero, and Nancy Lee Carrero Vinci (collectively, the "Carreros" or "Plaintiffs"), appeal the trial court's October 4, 2018 judgment granting a Motion for Summary Judgment filed by appellee, Mandina's, Inc. d/b/a Mandina's Restaurant ("Mandina's), and the trial court's December 12, 2018 judgment denying the Carreros' Motion for New Trial. For the reasons that follow, we reverse the October 4, 2018 judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2016, the Carreros filed a Petition for Damages ("Petition") against Mandina's alleging negligence and strict liability for the injury and death of Mrs. Carrero on August 14, 2015. On that date, Mrs. Carrero had dined with her daughter at Mandina's. The Petition alleges that Mrs. Carrero exited the Mandina's building using the sloped, step-less handicap ramp leading from the

building down to the city street. The Petition asserts that, because of Mrs. Carrero's age and physical condition, she walked down the right side of the ramp supporting herself with her right hand on the middle handrail. According to the Petition, unbeknownst to Mrs. Carrero, the middle handrail ended without warning before the ramp ended, and when Mrs. Carrero reached the end of the ramp, her right hand slipped off the end of the handrail, causing her to lose her balance and tumble to the concrete ramp and the ground. As a result, Mrs. Carrero fell on her head and sustained a closed head injury. She was taken to the emergency room, where a computerized tomography ("CT") scan showed a frontal scalp hematoma. Hours after returning home, Mrs. Carrero developed right-side weakness and lethargy. She returned to the emergency room where a second CT scan showed a left frontal lobe parenchymal hematoma, which had grown from two centimeters ("cm") in size to 6.4 cm x 5 cm x 4.6 cm, and which had surrounding vasogenic edema, resulting in intracranial hemorrhage. On this second visit to the emergency room, Mrs. Carrero was admitted to the hospital and she lapsed into a comatose state. On August 17, 2015, she was transferred to hospice care for end-of-life protocol. Mrs. Carrero passed away from complications related to the intracranial hemorrhage on August 22, 2015.

In the Petition, the Carreros assert that Mandina's is liable for survival and wrongful death damages for its failure to properly construct, install, or maintain the ramp and handrail, free from all vices and defects and conditions that would render it unreasonably dangerous. The Petition also alleges that the handrail, which failed

2

to extend at least 12 inches beyond the end of the sloped ramp, violated the ANSI Code[1] and the Americans with Disability Act ("ADA") Accessibility Guidelines.

On July 16, 2018, Mandina's filed a Motion for Summary Judgment seeking dismissal of Plaintiffs' claims on two grounds: (1) Mandina's did not know, nor was there any reason that it should have known, of the alleged defect in the handrail; and (2) the handrail was not reasonably dangerous because it was open and obvious to all.

On September 13, 2018, the trial court held a hearing on the Motion for Summary Judgment, and on October 4, 2018, the court signed a judgment granting the motion and dismissing the Carreros' claims, with prejudice. On October 12, 2008, Plaintiffs filed a Motion for New Trial, which the trial court denied on December 12, 2018.

The Plaintiffs timely appealed.

## DISCUSSION

**Standard of Review**

We apply a *de novo* standard of review in examining a trial court's ruling on summary judgment. *Hare v. Paleo Data, Inc.*, 11-1034, p. 9 (La. App. 4 Cir. 4/4/12), 89 So.3d 380, 387. Accordingly, we use the same criteria that govern a trial court's consideration of whether summary judgment is appropriate. *Id.* "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). In "'determining whether an issue is genuine*, courts *cannot consider*

---

[1] The American National Standards Institute.

*the merits, make credibility determinations, evaluate testimony, or weigh evidence.'" Fiveash v. Pat O'Brien's Bar, Inc.*, 15-1230, p. 7 (La. App. 4 Cir. 9/14/16), 201 So.3d 912, 917 (emphasis in original) (quoting *Quinn v. RISO Invest., Inc.*, 03-0903, pp. 3-4 (La. App. 4 Cir. 3/3/04), 869 So.2d 922, 926).

**Burden of Proof**

La. C.C.P. art. 966(D)(1) governs the mover's burden on a motion for summary judgment:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

**Premises Liability**

In general, the Carreros' Petition claims that Mandina's is liable to them for allowing an unreasonably dangerous condition to exist on the handrail of the building ramp. The Carreros' claims are thus rooted in La. C.C. arts. 2317, 2317.1, and 2322. La. C.C. art. 2317 provides:

> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

La. C.C. art. 2317.1 provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercised such reasonable care. . . .

4

La. C.C. art. 2322 provides:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. . . .

La. C.C. art. 2322 "'specifically modifies liability under Article 2317 with respect to the owner of a ruinous building or defective component part of that building.'" *Hooper v. Brown*, 15-0339, p. 6 (La. App. 4 Cir. 5/22/15), 171 So.3d 995, 1000 (quoting *Broussard's v. State of Louisiana through the Office of State Bldgs.*, 12-1238, p. 8 (La. 4/5/13), 113 So.3d 175, 182).

Under these articles, a plaintiff must establish all of these elements:

1. The thing was in the owner's custody or control;

2. The thing contained a defect creating an unreasonable risk of harm;

3. The damage was caused by the defect;

4. The owner knew or should have known of the vice or defect;

5. The owner could have prevented the damage by the exercise of reasonable care; and

6. The owner failed to exercise such reasonable care.

*Maddox v. Howard Hughes Corp.*, 19-0135, p. 6 (La. App. 4 Cir. 4/17/19), 268 So.3d 333, 338 n.6 (citing Joseph S. Piacun, *The Abolition of Strict Liability in Louisiana: A Return to a Fairer Standard or an Impossible Burden for Plaintiffs?*, 43 Loy. L. Rev. 215, 235 (1997)).

The parties do not dispute that the handrail was owned by and in the custody of Mandina's. "The gateway question, therefore, is whether the ruinous building, or a defective component part, creates an unreasonable risk of harm." *Hooper,*

5

15,0339, p. 7, 171 So.3d at 1000. The Supreme Court has described this question as "'a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts.'" *Id*. (quoting *Reed v. Wal-Mart Stores, Inc.,* 97-1174, p. 4 (La. 3/4/98), 708 So. 2d 363, 364). Thus, "[w]hether a defect presents an unreasonable risk of harm is a 'a matter wed to the facts' and must be determined in light of the facts and circumstances of each particular case." *Id*. (quoting *Broussard's,* 12-1238, p. 9, 113 So.3d at 183). To determine whether a condition is unreasonably dangerous, one particular factor to be applied is the likelihood and magnitude of harm, including the "obviousness and apparentness" of the condition. *Bufkin v. Felipe's, LLC,* 14-0288, p. 6 (La. 10/15/14). 171 So.3d 851, 856. Here, Mandina's relies upon the "open and obvious'' doctrine as a basis for its summary judgment. "[A]bsent any material factual issue, the summary judgment procedure can be used to determine whether a defect is open and obvious and thus does not present an unreasonable risk of harm." *Jones v. Stewart*, 16-329, p. 14 (La. App. 4 Cir. 10/5/16), 203 So.3d 384, 393.

**Plaintiffs' Experts**

### *Robert C. Olivier*

Plaintiff's expert, Robert C. Olivier, AIA and NCARB, is a registered architect in six states (including Louisiana) and the U.S. Virgin Islands. Mr. Olivier has been engaged to provide expert reports and expert deposition testimony as a professional architect on numerous issues, including commercial handrail design. On November 14, 2017, Mr. Olivier visited the site of the accident involving Mrs. Carrero to inspect the handicap access ramp where Mrs. Carrero fell. Mr. Olivier attested that the International Building Code ("IBC") Section 1009.11.5 requires that "ramps, handrails must be extended 12 inches horizontally

6

beyond the last sloped ramp segment." Section 4.8.5(2) of the ADA Accessibility Guidelines also mandates that the handrail for an access ramp "shall extend at least 12 inches beyond the top and bottom of the ramp segment and shall be parallel with the floor and ground surface." Mr. Olivier opined:

> The Mandina's handrail is non-compliant with the IBC and the Accessibility Guidelines. The requirement for a 12 inch horizontal handrail section at the bottom of a ramp is clear and prescriptive. Therefore the handrail is non-compliant.

Mr. Olivier explained why the handrail was dangerous:

> The length that a handrail extends beyond the top and bottom of a stairway, ramp, or other location where handrails are otherwise not continuous is an important factor for the safety of the users. An occupant must be able to grasp securely a handrail beyond the last riser of a stairway or the last sloped cement of a ramp.

### Angela DiDomenico

Plaintiffs' other expert Angela DiDomenico, Ph.D., CPE, is a Certified Professional Ergonomist employed in the field of Human Factors/Biomechanics by ARCCA, Inc. Ms. DiDomenico has completed research projects examining the mechanism of age-related alterations in balance control mechanisms and the effect of tasks and environmental factors, including the examination of microslips during gait, lateral reaching, and postural transitions from non-erect postures to standing. In her research she has investigated the relationship of kinematic, kinetic, and electromyographic data collected during laboratory studies performed on human participants to advance scientific knowledge regarding the interaction between human movements during track performance and the mechanisms of balance control as measured by the center of mass and the center of pressure.

Based on her review of Mrs. Carrero's medical records, photographs of the site, the deposition and affidavit of Elizabeth Carrero, the affidavit of Robert C.

7

Olivier, the Accessibility Guidelines for the ADA, IBC 2003, and the National Fire Protection Association 101: Life Safety Code, Ms. DiDomenico opined as follows:

> The handrail for the handicap access ramp at Mandina's Restaurant does not comply with either the International Building Code, 2003, or the Accessibility Guidelines contained in the Americans with Disabilities Act of 1994, which both require that the handrail must be extended 12 inches horizontally beyond the last sloped ramp segment.

Ms. DiDomenico described the unreasonable risk of harm as follows:

> It is her professional opinion based on the nature and location of the physical injuries sustained by Marie Carrero, the testimony of Elizabeth Ann Charlotte Carrero, and the design and configuration of the handrail and handicap access ramp at the Mandina's Restaurant, that Marie Carrero's fall and injuries were proximately caused by the failure to outfit the handicap ramp with a compliant handrail. More particularly, based on the evidence, it is her professional opinion that Marie Carrero lost her balance when the handrail improperly ended prematurely, which caused her to fall forward to the cement below and resulted in her sustaining serious impacts to her head.

**Actual or Constructive Knowledge of Unreasonably Dangerous Condition**

The Carreros' first contention is that Mandina's knew or should have known of the vice or defect that created an unreasonable risk of harm. To overcome summary judgment, the Carreros must show evidence that genuine issues of material fact exist as to Mandina's actual or constructive knowledge of the allegedly defective handrail prior to Mrs. Carrero's accident. "The concept of constructive knowledge imposes a reasonable duty to discover apparent defects in things under the defendant's garde." *Lotridge v. Abril*, 07-1401, 07-1402, p. 5 (La. App. 4 Cir. 12/30/08), 3 So.3d 84, 88.

*Constructive Notice Based on Evidence of ADA and Code Violations*

The Carreros submitted expert evidence from Mr. Olivier establishing that the handicap ramp violated building codes and ADA Accessibility Guidelines, and that the specific violation – failing to extend the handrail to the handicap ramp a

full 12 inches beyond the last sloped segment of the ramp – caused Mrs. Carrero's injuries. Mr. Olivier concluded that "the Mandina's handrail is non-compliant with the IBC and the Accessibility Guidelines. The requirement for a 12-inch horizontal handrail section at the bottom of the ramp is clear and proscriptive. Therefore, the handrail is non-compliant." According to Mr. Olivier, "[a]n occupant must be able to grasp securely a handrail beyond the last riser of a stairway or the last sloped segment of a ramp."

The purpose of the requirement that the handrail extend 12 inches beyond the last sloped segment was confirmed by Ms. DiDomenico's affidavit in which she concluded that Mrs. Carrero's fall and injuries were caused by Mandina's failure to outfit the handicap ramp with a compliant handrail. Ms. DiDomenico specifically opined that Mrs. Carrero lost her balance when the handrail improperly ended prematurely, causing her to fall.

Persuasive on this issue is *Walters v. City of West Monroe*, in which the Second Circuit held that evidence that a municipality failed to maintain a handrail in the "operable working condition" required by the ADA constituted "the absence of that exercise of reasonable care for the railings," and was sufficient for the factfinder to conclude that the city "should have known of this defective railing." *Walters*, 49,502, p.8 (La. App. 2 Cir. 2/14/15), 162 So.3d 419, 424. *See also Dufrene v. Gautreau Family, LLC*, 07-0467, p. 16 (La. App. 5 Cir. 2/22/08), 980 So. 2d 68, 80 (evidence that height of individual stairs violated building code used to prove constructive knowledge with regards to defect in stairs); *Dillenkofer v. Marrero Day Care Ctr., Inc.*, 16-713, p. 4 (La. App. 5 Cir 5/24/17) 221 So. 3d 279, 282-83 (a violation of "various safety codes' by failure to have left-side handrail installed on exit stairway was sufficient to create a genuine issue of fact regarding

9

defendant's constructive knowledge); *Tannelill v. Joguyro, Inc.*, 97-571, p. 6 (La. App. 5 Cir. 4/9/98), 712 So.2d 238, 242 (trial court found that ramp on which plaintiff fell was unreasonably dangerous because there was expert testimony that the ramp at issue failed to comply with any of the safety codes, including the Building Code of Jefferson and the Life Safety Code); *Thompson v. Richards Clearview, Inc.*, 18-610, p. 3 (La. App. 5 Cir. 5/15/19), --- So.3d --, 2019 WL 2121876, *5 (expert testimony that mall exit violated the building code governing curbs produced factual support sufficient to contest whether the curb at issue was unreasonably dangerous); *Dupre v. Saenger Arts Ctr., Inc.*, 508 So.2d 837, 838 (La. App. 4th Cir. 1987) (trial court accepted testimony of plaintiff's safety expert, who found that lack of handrails on steps constituted unreasonable risk of harm); *Couvillion v. Riverside Props., L.L.C.*, 17-1000, p. 4 (La. App. 4 Cir. 6/20/18), 249 So.3d 907, 909 (testimony of expert engineer that injury was due to an unreasonable dangerous condition caused by worn out stairs and lack of hand rails created genuine issue of material fact regarding the existence of a unreasonably dangerous condition).

We find that evidence of Mandina's violations of safety and building codes governing handrails created a genuine issue of material fact as to whether Mandina's had constructive knowledge of the handrail's unreasonably dangerous condition.

### *Property Owners Cannot Escape Liability for an Unreasonably Dangerous Condition by Claiming Ignorance of It.*

In granting summary judgment in favor of Mandina's, the trial court emphasized that Mandina's reasonably relied upon an architect, a general contractor, and a building inspector to ensure that the handrail was installed in

10

compliance with building codes and standards. The Carreros assert that Mandina's cannot escape from liability for an unreasonably dangerous condition by merely complaining ignorance of it. Mandina's argues that "[t]here is nothing unreasonable about these handrails just because they fall eight inches short of a technical specification that only an architect could possibly know." According to Mandina's, "whatever duty defendant had to make sure its handrails were adequate was easily met by their use of a qualified architect and a licensed general contractor in the original construction." Mandina's also notes that the entire construction was examined by building inspectors with the City of New Orleans, and occupancy was approved without comment on the ramp or the handrails. According to Mandina's, its expertise is in "seafood, gumbo and red beans and rice, not handrails and building codes."

We reject Mandina's attempts to avoid liability by shifting the blame for the existence of the unreasonably dangerous condition to the architectural firm that allegedly designed the access ramp, the contractor who installed the defective handrail, and the City Of New Orleans inspectors who approved it. We also reject Mandina's attempt to shift the blame to the architect and the contractor because Mandina's "was not a contractor or an expert in building code."

"The owner of a building is solely responsible for damages caused due to vices and/or defects in the building." *Perniciaro v. Liberty Mut. Ins. Co.,* 02-0889, p.1, (La. App. 4 Cir. 5/20/02), 820 So.2d 600, 601. "This is a non-delegable duty vis-à-vis persons who claim injury due to vices or defects in the building." *Id*. "That is not to say, however, that the owner of a building cannot seek indemnity or contribution from a third-party for its possible negligence in causing the vices or defects." *Id. See also Nunez v. Isidore Newman High Sch.*, 306 So.2d 457, 459

11

(La. App. 4th Cir. 1975) ("Newman has the duty to employ reasonable care in discovery of defects on its premises. This duty generally cannot be delegated to others.").[2]

Based on the foregoing, we find that plaintiffs established a genuine issue of material fact as whether Mandina's had constructive knowledge of the defect on its handrail based on the alleged errors by Mandina's architect, contractor, and inspector.

### *Property Owners are Presumed to Know About Long-Standing Defects.*

The Carreros contend that the length of time that the defective handrail existed is compelling evidence that Mandina's knew of the dangerous condition. "A court may find constructive knowledge 'if the conditions that caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury.'" *Encalade v. A.H.G. Solutions, LLC,* 16-0357, p. 12 (La. App. 4 Cir. 11/16/16), 204 So.3d 661, 668. When a defective handrail remains in use on the business property for more than a decade, as is the case here, we find that there should be a presumption that the property owner constructively knew of the defect.

### *Whether the Defective Handrail Caused Prior Accidents is Immaterial*

Mandina's argues that it should not be liable because there have been no prior accidents involving the defective handrail. Even if true, although we find that the absence of prior falls may relate to actual knowledge, this does not affect constructive knowledge, which is at issue here.

---

[2] Moreover, the building was constructed more than ten years ago after Hurricane Katrina. In this suit, Mandina's filed third-party demands against the architect and the contractor. The architect filed a peremptory exception of statutory peremption, and was dismissed from the suit pursuant to the five-year peremptive period in La. 9:2772.

For example, in *Haley v. Roberts*, 02-30 (La. App. 5 Cir. 5/29/02), 820 So.2d 1114, the plaintiff sued a building owner and others after her shoe caught in a ridge of the exit ramp from a barber shop. The building owner moved for summary judgment, arguing that the plaintiff could not prove actual or constructive knowledge of the defect. The defendant submitted an affidavit attesting that there had been no prior or subsequent falls or complaints with the ramp. The plaintiff responded with an expert report identifying multiple defects in the ramp design, including the absence of handrails, which deviated from the standards for a handicap ramp. The trial court granted the defendant's summary judgment, but the Louisiana Fifth Circuit reversed. The Court found that, even though evidence regarding the absence of prior falls "is sufficient to support defendants' position regarding actual notice," the affidavit "is not sufficient to support defendants' position as to constructive notice." *Haley*, 02-30, p. 7, 820 So.2d at 1117. The Court concluded that the plaintiff's expert's affidavit created material issues of fact "as to whether the defendants had constructive notice of the alleged defect." *Id*.

We find the reasoning in *Haley* to be persuasive, and reject Mandina's contention that the absence of prior falls insulates it from liability.

### *Open and Obvious Doctrine*

It is well settled that a landowner owes a duty to a plaintiff to discovery any unreasonably dangerous conditions, and to either correct the condition or warn of its existence. *Warren v. Kenny*, 10-1580, p. 6 (La. App. 4 Cir. 5/18/11), 64 So.3d 841, 847. Nevertheless we have recognized that defendants generally do not have a duty to protect against an open and obvious hazard. *Marshall v. Jazz Casino*, 15-1192, p. 2 (La. App. 4 Cir. 6/29/16), 197 So.3d 316, 318. "In order for an alleged hazard to be considered obvious and apparent, [the supreme] court has consistently

13

stated the hazard should be one that is open and obvious to everyone who may potentially encounter it." *Id.* (alteration in original). "The degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous." *Id.*, 15-1192, p. 8, 197 So.3d at 321. "[W]hen 'the condition encountered is obvious and apparent to all and not reasonably dangerous,' summary judgment is not precluded." *Id.* (quoting *Bufkin,* 14-0288, p. 12, 171 So.3d at 859 n.3).

The Carreros contend that the handrail, which did not extend the required 12 inches beyond the end of the ramp, was not an open and obvious condition which would preclude Mandina's liability. We agree that the defective handrail was not open and obvious. Photographs show that the handicap ramp gradually sloped downward, and a pedestrian using it would not have realized that the handrail abruptly ended before the end of the slope until she reached the end of the handrail. This defect is not one that is open and obvious to all. Mandina's has failed to establish a prima facie case that the handrail was an open and obvious danger.

## CONCLUSION

In sum, we find that the Carreros produced factual support sufficient to contest whether the handrail at issue was unreasonably dangerous, was open and obvious, and whether Mandina's had constructive knowledge of the defect. Thus, under the particular facts of this matter, we conclude there are remaining genuine issues of material fact, and summary judgment is not appropriate. We reverse the trial court's October 4, 2018 judgment granting summary judgment and remand for further proceedings.[3]

---

[3] Given our disposition, we do not reach the Carreros' appeal of the denial of its Motion for New Trial.

14

**REVERSED AND REMANDED**