| ARNOLD ROMAIN | * | NO. 2020-CA-0243 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| BROOKS RESTAURANTS, | * | |
| INC., BROOKS HOLDINGS, | | FOURTH CIRCUIT |
| LLC, AND SENTINEL | * | |
| INSURANCE COMPANY | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-12719, DIVISION "L"
Honorable Kern A. Reese, Judge
\* \* \* \* \* \*
**JUDGE SANDRA CABRINA JENKINS**
\* \* \* \* \* \*

(Court composed of Judge Sandra Cabrina Jenkins, Judge Regina Bartholomew-Woods, Judge Dale N. Atkins)

**BARTHOLOMEW-WOODS, J., CONCURS IN RESULT**

Brian P. Marcelle
Stephen Michael Huber
HUBER THOMAS MARCELLE
1100 Poydras Street, Suite 2200
New Orleans, LA 70163


      COUNSEL FOR PLAINTIFF/APPELLANT


Erin O. Braud
Julie Eustis Vaicius
LAW OFFICE OF JULIE E. VAICIUS
3900 North Causeway Boulevard
Suite 1040
Metairie, LA 70002


      COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**NOVEMBER 18, 2020**

This case involves a customer's slip and fall on an icy sidewalk adjacent to the entrance of a Burger King restaurant on Elysian Fields in New Orleans. Plaintiff, Arnold Romain ("Mr. Romain"), appeals the trial court's February 12, 2020 judgment granting a motion for summary judgment filed by defendants, Brooks Restaurant, Inc. ("Brooks"), which owns and operates the restaurant, and Sentinel Insurance Company (collectively, "Defendants"). For the reasons that follow, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 19, 2018, Mr. Romain filed a Petition for Damages (the "Petition") against Defendants, alleging that on or about January 17, 2018, while Mr. Romain was attempting to leave the Burger King restaurant after dining, he slipped on ice located directly outside the front door. Mr. Romain alleges that when he entered the restaurant, he noticed the ice and reported to employees that the sidewalk was dangerous, and that a rug should be put down. Mr. Romain avers that prior to his slip and fall, a Burger King employee poured water over the ice, and that the slick, wet ice presented a hazardous and dangerous condition. The

Petition alleges that Defendants' acts of negligence included: (1) failure to exercise reasonable care in maintaining the front door area; (2) failure to notify patrons of the hazardous condition; (3) failure to remedy the defect (the slick ice) in a timely manner; (4) failure to provide an alternate means of ingress and egress; and (5) causing the hazardous condition to become more dangerous by pouring water on the ice.

On November 21, 2019, Defendants filed a Motion for Summary Judgment, seeking dismissal of Mr. Romain's claims. Defendants argued that because Mr. Romain saw the ice on the sidewalk before he entered the restaurant, the risk of harm was not unreasonable because it was open and obvious, universally known, and easily avoidable. Mr. Romain argued that the dangerous condition was not visible to all who encountered it because another patron slipped and fell on the ice while helping him get up after his fall.

On January 10, 2020, the trial court held a hearing and on February 12, 2020, the trial court signed a judgment granting Defendants' Motion for Summary Judgment, and dismissing Mr. Romain's claims, with prejudice. Mr. Romain timely appealed.

## DISCUSSION

**Standard of Review**

We apply a *de novo* standard of review in examining a trial court's ruling on summary judgment. *Lewis v. Jazz Casino Co., L.L.C.*, 17-0935, p. 5 (La. App. 4 Cir. 4/26/18), 245 So.3d 68, 72. Accordingly, we use the same criteria that govern a trial court's consideration of whether summary judgment is appropriate. *Id.* "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that

2

the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubts must be resolved in the opponent's favor. *Lewis*, 17-0935, p. 6, 245 So.3d at 72 (citing *Fiveash v. Pat O'Brien's Bar, Inc.*, 15-1230, p. 7 (La. App. 4 Cir. 9/14/16), 201 So.3d 912, 917). In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Id.*

**Burden of Proof**

La. C.C.P. art. 966(D)(1) governs the mover's burden on a motion for summary judgment:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Mr. Romain lists a single assignment of error. He contends that the trial court erred in granting Defendants' Motion For Summary Judgment because there are genuine issues of material fact as to whether the ice and water were unreasonably dangerous.

**Open and Obvious Doctrine**

La. C.C. art. 2317.1 states:

> [T]o prove liability for an unreasonably dangerous defect, a plaintiff has the burden to show that the thing was in the custodian's custody or control, it had a vice or defect that presented an unreasonable risk of harm, the defendant knew or should have known of the

3

unreasonable risk of harm, and the damage was caused by the defendant.[1]

Courts apply a risk-utility test to determine whether a thing may be considered "unreasonably dangerous." This balancing test examines:

(1) the utility of the complained-of condition;

(2) the likelihood and magnitude of the harm, including the **obviousness and apparentness of the condition;**

(3) the cost of preventing the harm; and

(4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature.

*Bufkin v. Felipe's Louisiana*, *LLC*, 14-0288, p. 6 (La. 10/15/14), 171 So.3d 851, 856. [Emphasis added.]

The primary focus of Defendants' Motion for Summary Judgment—that the icy sidewalk was open and obvious to all—implicates the second prong of the risk-utility inquiry, which examines whether the dangerous or defective condition is obvious and apparent. *Hooper v. Brown*, 15-0339, p. 9 (La. App. 4 Cir. 5/22/15), 171 So.3d 995, 1001. A merchant generally does not have a duty to protect against an open and obvious hazard. *Sepulvado v. Traveler's Ins.*, 52,415, p. 5 (La. App. 2 Cir. 11/8/18), 261 So.3d 980, 983. "In order for a hazard to be considered open and obvious, the Supreme Court has consistently stated that the hazard should be one that is open and obvious to all, *i.e.*, everyone who may potentially encounter it." *Id.* (citing *Caserta v. Wal-Mart Stores, Inc.*, 12-0853, p. 1 (La. 6/22/12), 90

---

[1] The merchant liability statute likewise provides that in a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant has the burden of proving that "the condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable." La. R.S. 2800.6.

So.3d 1041, 1043; *Dauzat v. Curnesi Guillot Logging, Inc.*, 08-0528, p. 4 (La. 12/2/08), 995 So.2d 1184, 1186). "If the facts and circumstances of a particular case show that a dangerous condition should be open and obvious to all who encounter it, then the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff." *Hooper*, 15-0339, p. 9, 171 So.3d at 1001 (citing *Broussard v. State of Louisiana, through the Office of State Bldgs.*, 12-1238, p. 11 (La. 4/15/13), 113 So.3d 175, 184). "The open and obvious to all inquiry therefore 'focuses on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim's actual or potentially ascertainable knowledge.'" *Id.* (quoting citing *Broussard*, 12-1238, p. 18, 113 So.3d at 188. Thus, Mr. Romain's awareness of the ice is not dispositive of whether the conditions were "open and obvious to everyone."

Within the context of summary judgment practice, "'our jurisprudence does not preclude the granting of a motion for summary judgment in cases where the plaintiff is unable to produce factual support for his or her claim that a complained-of-condition or things is unreasonable dangerous.'" *Hooper*, 15-0339, p. 10, 171 So.3d at 1001 (quoting *Allen v. Lockwood*, 14-1724 (La. 2/13/15), 156 So.3d 650, 653). "In such a procedural posture, 'the court's obligation is to decide "if there [is] a genuine issue of material fact as to whether the [complained-of-condition or thing] created an unreasonable risk of harm. . . . .'" *Id.* (quoting *Allen*, 14-1724, 156 So.3d at 653).

We now examine the relevant facts as presented by the parties to the trial court.

Mr. Romain testified in his deposition that on the morning of his accident there was a "hard freeze," the "worst freeze we had for a while." He stated that the

5

parking lot was "okay" but the sidewalk "was completely frozen solid." He recalled that he saw the ice when he was entering the restaurant, and had to step up eight inches to get into the building. After Mr. Romain got his food, he told the supervisor that the condition was "dangerous" and that she should put down a rug. She refused. As he was eating, Mr. Romain saw the supervisor walk out with what looked like a pitcher of water and what he thought was a box of salt. Mr. Romain did not pay attention to her, except that he saw her pour water on the ice.

Mr. Romain recalled that there were three other men eating at the restaurant when he was there, and he heard them tell the supervisor not to pour water on the ice. He testified that he heard the men holler at the supervisor "don't put no water. . . don't do that," and "hold up, don't put that on it."

Mr. Romain testified as follows regarding the accident:

> [S]o I was going out and I thought it was okay, she didn't have nothing blocked off, no nothing you know, and I said she made it all right. I didn't know if she had washed it off or what, but the minute I stepped down off the sidewalk, the first foot I put down, the minute I put the first foot down off about an eight inch step down from the sidewalk to the parking lot, my foot – my feet went from under me, both feet. I was parallel to the ground (indicating). I came down on the point of that curb. The curb was real sharp. Where the sidewalk goes down there was at least an eight inch drop. So I came down on my back on that point of the curb, a sharp, sharp point, it wasn't rounded off. And that was – that's pretty much it.

Mr. Romain testified that when he entered the restaurant, he had to be careful because it was solid ice, but when he left it was "real slippery" because the supervisor poured water on the ice.

Mr. Romain recalled that the three men who were eating in the restaurant with him saw him fall and rushed out to pick him up. One of the three men slipped on the ice like Mr. Romain did, with his feet going out from under him. After Mr. Romain got up from his fall he went back to the supervisor, who wrote up a report.

6

The supervisor also put down a rug at the entrance, blocked it off, and made a phone call.

The record shows that the three Burger King customers who witnessed Mr. Romain's fall were aware of the slippery ice and warned the supervisor not to pour water on the ice. As the Supreme Court has noted, "in order to be open and obvious, the risk of harm should be apparent to all who encounter the dangerous condition." *Hooper*, 15-339, p. 18, 171 So.3d at 1005 (quoting *Broussard*, 121-1238, p. 17, 113 So.3d at 188).

According to an affidavit of John Payne, one of the three men who witnessed Mr. Romain's accident, his cousin slipped and fell helping Mr. Romain get up from his fall. According to Mr. Payne's affidavit, he was aware of the ice, which had hot water thrown on it in an attempt to melt it. Although it is improbable that a potentially dangerous condition which is observable to all will cause injuries to an individual who exercises reasonable care, in this instance the affiant's cousin – along with Mr. Romain – did not exercise reasonable care when encountering this open and obvious condition. *See Hooper*, 15-0339, p. 19, 171 So.3d at 1006.

## CONCLUSION

We find that there is no genuine issue of material fact as to whether the slippery, icy sidewalk was open and obvious to all who encountered it. The trial court did not err in granting Defendants' motion for summary judgment. For the foregoing reasons, we affirm the trial court's February 12, 2020 judgment granting Defendants' motion for summary judgment and dismissing Mr. Romain's claims, with prejudice.

## AFFIRMED

7