MOON LANDRIEU, Judge Pro Tempore.
|]The plaintiffs in these consolidated cases, LeAnne and G. Brady Lotridge (“the Lotridges”) and Charles Fellows, M.D. (“Dr. Fellows”), appeal two district court judgments[1] dismissing their claims against the defendants, Charles Cecil Roberts (“Mr. Roberts”) and Kathryn F. Roberts (“Ms. Roberts”), on the defendants’ motions for summary judgment.
FACTS AND PROCEDURAL HISTORY
In 2004, the Lotridges were residing in Unit 9 of the Lighthouse Harbor Condominiums, located at 7300 Lakeshore Drive in New Orleans, which they had leased from Dr. Fellows, the owner. Mr. Roberts, who resided in Unit 10, directly above the Lotridges, had leased the premises from its owner, Maria Hernandez Abril, M.D. (“Dr. Abril”). On the night of April 17, 2004, between 10:00 and 11:00 p.m, the Roberts’ minor son, Kyle, flushed the toilet after using the bathroom and went upstairs to bed.[2] Several hours later, around 4:30 a.m, Kyle awoke his father, complaining of nausea. Mr. Roberts went downstairs to the |.¿kitchen to get medicine and noticed water on the floor. Upon inspection, he discovered that the toilet in the adjacent bathroom was overflowing. He immediately turned off the water valves, went upstairs to tend to Kyle and then returned to clean up the water. The plumber who later repaired the toilet informed Mr. Roberts that a metal part of the flushing mechanism inside the tank broke due to rust, causing the toilet to malfunction.
On April 18, 2004, Mrs. Lotridge awoke at 6:30 a.m., and went into her kitchen to heat a cup of coffee. When she opened the microwave door, “water gushed out.” Upon further inspection, she discovered “water seeping out of the ceiling [and] the walls,” sheetrock hanging from the ceiling in the upstairs guest bedroom and water ankle-deep on the floor. Later that morning, the Lotridges learned from Mr. Roberts that one of his toilets had malfunctioned when Kyle flushed it the night before. As a result of the extensive water damage to Unit 9 and their personal property, the Lotridges had to vacate the premises. Eleven months later, the repairs to the condominium were completed.
The Lotridges sued Mr. Roberts and Ms. Roberts, individually, and as natural tutors of Kyle, and Dr. Abril for the damages to their property and the expenses incurred in relocating. Dr. Fellows also sued the defendants for the damages to Unit 9 and his loss of rental income. The plaintiffs alleged in their petitions that Mr. Roberts and Ms. Roberts were solidarity liable for the negligent acts of their minor son pursuant to La. C.C. art. 2318.[3] They *87 also alleged that Mr. | ¡¡Roberts was negligent in failing to see what he should have seen, i.e., the overflowing toilet; failing to stop the overflow; failing to notify Dr. Abril of the deteriorated condition of the toilet; and, failing to exercise reasonable care in discovering the ruinous condition of the toilet in his residence and to remedy the defect. As to Dr. Abril, the plaintiffs alleged that she was negligent in failing to maintain the toilet and plumbing on her property; failing to inspect the toilet to prevent ruin; and failing to exercise reasonable care in discovering the ruinous condition of the toilet and to repair it timely.
After the lawsuits were consolidated for trial, Mr. Roberts and Ms. Roberts each filed a motion for summary judgment, arguing that the claims against them should be dismissed because the plaintiffs cannot prove they (Mr. Roberts, Ms. Roberts and/or Kyle) knew or should have known that the toilet flushing mechanism was corroded, broken or defective and failed to repair it. They also argue that pursuant to the terms of the Unit 10 lease agreement, Dr. Abril, the lessor, assumed and/or retained the responsibility for the plumbing in the premises.
Following a healing, the trial court granted the motions for summary judgment, dismissing Mr. Roberts and Ms. Roberts as defendants from the plaintiffs’ lawsuits.
DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. King v. Parish Nat’l Bank, 04-0387, p. 7 (La.10/19/04), 885 So.2d 540, 545. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and | ¿admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Favored in Louisiana, the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, and should be construed to accomplish those ends. La. C.C.P. art. 966(A)(2). La. C.C.P. art. 966(C)(2) provides, in pertinent part:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he ‘,will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
(Emphasis added).
The plaintiffs’ suits present negligence claims under La. Civ.Code arts. 2315, 2317 and 2317.1, which provide:
La. Civ.Code art. 2315
*88 A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
B. Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease. Damages shall include any sales taxes paid by the owner on the repair or replacement of the property damaged.
|.-,La. Civ.Code art. 2317
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
La. Civ.Code art. 2317.1 The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise or reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Article 2317.1, enacted in 1996, effectively eliminated the concept of “strict liability” in cases involving defective things and imposed a negligence standard based on the owner or custodian’s knowledge or constructive knowledge of the defect. See Lasyone v. Kansas City Southern R., 00-2628, p. 6 (La.4/3/01), 786 So.2d 682, 689, at fn. 9. The concept of constructive knowledge imposes a reasonable duty to discover apparent defects in things under the defendant’s garde. Hagood v. Brakefield, 35,570 (La.App. 2 Cir. 1/23/02), 805 So.2d 1230, 1233.
In support of the motions for summary judgment, the defendants offered deposition testimony from Mr. Roberts, the Lo-tridges and Elizabeth Fellows, Dr. Fellows’ daughter, as well as a copy of the Unit 10 residential lease agreement signed by Dr. Abril and Mr. Roberts.
According to Mr. Roberts, he never had any problems with or complaints about the toilet prior to the April 2004 incident. Neither Dr. Abril nor anyone with Rthe condominium association had ever suggested to him that the toilet needed to be repaired or replaced. Mr. Roberts said that Kyle was the last person to use the toilet prior to bedtime the night of April 17, 2004, and never reported any type of problem with it. When Mr. Roberts discovered the overflow several hours later, nothing was clogging the toilet. The plumber who fixed the toilet told Mr. Roberts that a part of the flushing mechanism inside the tank broke, causing the water to overflow.
The Lotridges acknowledged that they were unaware the toilet in Unit 10 had malfunctioned until Mr. Roberts informed them of such later that morning. Neither were they aware of water ever coming from Unit 10 prior to the date of the incident. The Lotridges admitted that while they resided at the Lighthouse Harbor Condominium complex plumbers had not done any repair work on the toilets in their unit nor were they aware of any work done on the toilets in Unit 10.
*89 Ms. Fellows stated that she handled her eighty-year-old father’s rental property affairs and no one had ever reported any problem to her regarding water leaking from Unit 10 into Unit 9 prior to the incident on April 17-18, 2004.
The residential lease agreement for Unit 10, signed by Mr. Roberts and Dr. Abril, provided:

CONDITION, REPAIRS, ADDITIONS AND ALTERATIONS OF PREMISES

Lessor warrants that the leased premises are in good condition, unless otherwise noted. Lessor shall be responsible for the repair of electrical, plumbing, air conditioning and heating system provided the repair is not caused by misuse or neglect by the lessee. Lessee agrees to use the same with care, and to perform the usual cleaning and household maintenance customarily required. Air conditioning and heating filters are the responsibility of the Lessee. The running of the unit with dirty filters is not permitted. Lessee acknowledges that he has been provided the opportunity to inspect the premises and |7accepts it in its current condition and agrees to keep it in same condition during the term of this lease at his expense and return it to Lessor in the same or better condition at termination of this lease, normal decay, wear and tear excepted. The only exceptions to this are repairs/improvements that Lessor specifically agrees to perform on the premises as may be outlined in the “SPECIAL CONDITIONS” section of this lease.
It is undisputed that Ms. Roberts was not a lessee or a resident of Unit 10 on April 17-18, 2004, and, thus, did not have custody of the faulty toilet. Furthermore, in opposition to the motions for summary judgment, the plaintiffs offered no evidence to show Ms. Roberts knew or should have known the toilet flushing mechanism was defective or that Kyle had flushed the toilet negligently. Thus, we find the trial court properly granted the motions for summary judgment, dismissing her as a defendant in the plaintiffs’ lawsuits.
Pursuant to La. Civ.Code arts. 2817 and 2817.1, Mr. Roberts, as the lessee and resident of Unit 10 on the date of the incident, was the custodian of the defective toilet. The plaintiffs, however, offered no evidence to dispute his testimony that, pri- or to the incident, he had no actual knowledge that the toilet flushing mechanism was defective. Therefore, the issue is whether Mr. Roberts, in the exercise of reasonable care, should have known of the ruinous condition of the flushing mechanism.
Pursuant to the lease agreement, Dr. Abril, the lessor, was responsible for the repairs to plumbing system provided they were not caused by the misuse or neglect of the lessee. Mr. Roberts, however, was to perform the usual cleaning and household maintenance customarily required. The plaintiffs contend that Mr. Roberts would have discovered the corroded metal piece of the flushing mechanism by simply removing the top of the toilet tank. They point out that he | shad the air conditioning system serviced while a tenant in Unit 10, although it was not his responsibility under the lease. Likewise, the plaintiffs argue that if Mr. Roberts had exercised reasonable care while he lived in Unit 10 by either lifting the toilet tank lid or having a plumber inspect the toilet, then he would have discovered the corroded flushing mechanism and could have repaired it, preventing the malfunction.
In opposing the motions for summary judgment, the plaintiffs submitted an affidavit from Thomas Borland, a licensed home improvement contractor, who averred that he had installed and repaired *90 numerous residential toilets.. He stated that the metal part of the flushing mechanism inside the tank was clearly visible upon removal of the tank cover. Mr. Bor-land also averred that the corrosion, extensive enough to cause the metal part to break, occurred over an extended period of time. The plaintiffs also submitted the copy of an invoice dated May 8, 2003 from Southland Heating & Air Conditioning, Inc., evidencing that Mr. Roberts had the heating and ah- conditioning system in Unit 10 fully serviced.
Based on our de novo review of the record, we find that the plaintiffs have not offered any evidence sufficient to dispute the evidence that Mr. Roberts did not have constructive knowledge of the corroded flushing mechanism. Furthermore, the plaintiffs failed to submit any evidence that Mr. Roberts did not exercise reasonable care as the lessee and custodian of Unit 10. To the contrary, the evidence indicates that, in February 2003, while leasing the premises, Mr. Roberts contemplated purchasing the unit and had a contractor do some renovations. As a result of the work, sand and sawdust infiltrated the air conditioning and heating system. Mr. Roberts spent $545.00 to have Southland service the system, which included cleaning the air ducts, condensers, vaporizer coils and adding freon. | ^Although Mr. Roberts acknowledged that, during the nearly three years he leased Unit 10, he never removed the toilet tank lid or had a plumber inspect the toilet, the plaintiffs have not demonstrated that his failure to do so was unreasonable or not an exercise of reasonable care. Absent any evidence that Mr. Roberts either knew or had been warned of a problem with the toilet prior to the incident, we find no genuine issue of material fact as to whether Mr. Roberts exercised care in failing to discover and remedy the defective flushing mechanism. Thus, we find the trial court correctly granted the motion for summary judgment dismissing Mr. Roberts as a defendant in the plaintiffs’ lawsuits.
DECREE
Accordingly, for the above reasons, the trial court judgments of May 31, 2007 and June 18, 2007, granting motions for summary judgments in favor of Mr. Roberts and Ms. Roberts, are affirmed.
AFFIRMED.

. The Lotridges appeal from a judgment rendered and signed on June 18, 2007, while Dr. Fellows appeals from a judgment rendered and signed on May 31, 2007.

. In April 2004, Mr. and Ms. Roberts were separated and shared custody of their two minor sons. They have since divorced. At the time of the incident in question, Mr. Roberts was exercising his scheduled weekend visitation with the children at his home.

.La. C.C. art. 2318 provides:
*87 The father and the mother and, after the decease of either, the surviving parent, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.