HECTOR ORDONEZ AND　　　　　*　　　NO. 2025-CA-0224
CELINI ALONZO ORDONEZ,
INDIVIDUALLY AND AS THE　　　*
NATURAL TUTOR (TRIX) OF　　　　　COURT OF APPEAL
THE MINORS, KIARA　　　　　　*
ORDONEZ ALONZO AND　　　　　　FOURTH CIRCUIT
ISABELLA ORDONEZ　　　　　　*
ALONZO AND HECTOR　　　　　　　STATE OF LOUISIANA
ORDONEZ AS THE NATURAL　　* * * * * * *
TUTOR OF THE MINOR,
JOSEPF ORDONEZ CRUZ

VERSUS

SSW PROPERTIES LLC,
MARK WINSTON STALDER,
HUGO ST. HILAIRE AND
DANIEL J. WOMAC

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-06745, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**Judge Nakisha Ervin-Knott**
* * * * * *
(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge
Nakisha Ervin-Knott)

*LOBRANO, J., CONCURS AND ASSIGNS REASONS*

Lee W. Rand
LEE W. RAND, ATTORNEY AT LAW
400 Poydras St., Suite 2145
New Orleans, Louisiana 70130

　　　COUNSEL FOR PLAINTIFFS/APPELLANTS

Morgan J. Wells, Jr.
Evan J. Godofsky
LARZELERE PICOU WELLS SIMPSON LONERO, LLC
3850 North Causeway Boulevard
Suite 500 – Two Lakeway Center
Metairie, Louisiana 70002

　　　COUNSEL FOR DEFENDANT/APPELLEE

　　　　　　　　　　　　　　**NOVEMBER 12, 2025**
　　　　　　　　　　　　　　**REVERSED AND REMANDED**

NEK
DLD

Appellants – Hector Ordonez ("Mr. Ordonez") and Celini Alonzo Ordonez ("Mrs. Ordonez"), individually and as the natural tutor(trix) of the minors, Kiara Ordonez Alonzo and Isabella Ordonez Alonzo, and Mr. Ordonez as the natural tutor of the minor, Josepf Ordonez Cruz (collectively the "Ordonezes") – seek review of the district court's January 13, 2025 judgment granting SSW Properties, LLC's ("SSW") motion for summary judgment. For the reasons that follow, we reverse the district court's judgment and remand the matter to the district court for further proceedings.

## FACTUAL BACKGROUND

On May 23, 2019, SSW purchased the immovable property located at 6028 Magazine Street, in New Orleans, Louisiana (the "Property"), for use as a private medical practice. SSW is a limited liability company comprised of three individual medical doctors – Drs. Mark Winston Stalder ("Dr. Stalder"), Hugo St. Hilaire ("Dr. St. Hilaire"), and Daniel Womac ("Dr. Womac"). Prior to purchase, SSW hired Axelrad & Associates to conduct an inspection of the Property. Axelrad & Associates prepared an inspection report, and this report did not reveal a dangerous

1

condition associated with the second-floor balcony railing and recommended only cleaning and painting.

After completing the purchase of the Property, SSW hired MZ Architecture and Design, LLC ("MZ Architecture") to develop renovation plans to convert the property into a functioning medical office. On May 11, 2021, SSW contracted with Mayer Building Company ('Mayer") to perform the work as set forth in plans and specifications prepared by MZ Architecture.

Mayer, as the general contractor, utilized subcontractors to perform various tasks, including exterior painting. Mayer subcontracted with Crown Painting and Home Improvement, LLC ("Crown"), to perform the painting work. Mr. Ordonez, an employee of Crown, alleges that on August 5, 2021, he fell over the balcony while painting the ceiling overhang on the exterior second-floor balcony at the Property. As a result of this alleged accident, Mr. Ordonez sustained multiple injuries to his head and body.

## PROCEDURAL HISTORY

The Ordonezes filed a petition for damages ("petition") on July 29, 2022, naming SSW and Drs. Stalder, St. Hilaire, and Womac as defendants.[1] Thereafter, on October 21, 2024, SSW filed a motion for summary judgment ("motion") seeking a dismissal of all causes of action asserted against it. In its motion, SSW asserted the Ordonezes are unable to establish that it had custody of the Property when the alleged accident occurred or that it knew or should have known of any alleged defect with the second-floor balcony handrails (or in the Property), which are essential elements of their negligence claim. The Ordonezes opposed the motion with

---

[1] The claims against Drs. Stalder, St. Hilaire, and Womac were dismissed pursuant to the district court's May 2, 2023 judgment sustaining their exception of no cause of action.

evidence, which included: (1) photographs of the second-floor balcony at the Property taken by Mrs. Ordonez after the alleged accident; (2) Mrs. Ordonez's affidavit; and (3) a copy of the Axelrad & Associates' inspection report. In reply to the Ordonezes' opposition, SSW objected to Mrs. Ordonez's affidavit asserting it contained opinions lacking an adequate factual basis, was not based on personal knowledge, and offered improper legal conclusions.

The district court held a hearing on SSW's motion for summary judgment on December 13, 2024. During the hearing, the district court first ruled on SSW's evidentiary objections, which included the exclusion of portions of Mrs. Ordonez's affidavit. The district court sustained in part, and denied in part, the evidentiary objection, ruling that it would not consider any aspects of her affidavit that were not based on her personal knowledge or alluded to causation. However, the district court decided that it would consider the photographs taken by Mrs. Ordonez and her personal observations.

After considering the submitted evidence, the district court granted SSW's motion for summary judgment in open court. Specifically, the district court concluded that the Ordonezes failed to satisfy their burden of proof as it related to constructive notice, stating, in part:

> Absent some type of testimony or expert report or something indicating that the condition of the railing was something that would create a greater level of concern or suspicion with regard to constructive notice, the Court has to grant the motion for summary judgment.

The written judgment was signed on January 13, 2025, and the notice of signing of judgment was issued on the same date. The Ordonezes timely filed a motion for devolutive appeal on February 11, 2025, and on the next day, the district court signed the order granting the appeal.

## STANDARD OF REVIEW

"Appellate courts review the grant or denial of a motion for summary judgment *de novo*, employing the same criteria that govern a trial court's determination of whether summary judgment is appropriate." *Bercy v. 337 Brooklyn, LLC*, 2020-0583, pp. 2-3 (La. App. 4 Cir. 3/24/21), 315 So.3d 342, 345 (citations omitted).

## DISCUSSION

### *Summary Judgment Principles*

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

Under La. C.C.P. art. 966 (D)(1):

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense.

"The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

4

### *Evidentiary Ruling on Mrs. Ordonez's Affidavit*

Prior to the ruling on the motion for summary judgment, SSW objected to Mrs. Ordonez's affidavit, asserting that it contained opinions lacking an adequate factual basis, was not based on personal knowledge, and offered improper legal conclusions.

This Court has recently explained:

> Louisiana Code of Civil Procedure Article 967(A) states, in pertinent part, that "[s]upporting and opposing affidavits [in connection with a motion for summary judgment] shall be made on personal knowledge" and "shall set forth such facts as would be admissible in evidence...." This Court has defined "personal knowledge" for the purpose of a supporting affidavit as "something which a witness actually saw or heard, as distinguished from something a witness learned from some other person or source." *Harris v. Boh Bros. Constr. Co.*, 2020-0248, p. 8 (La. App. 4 Cir. 5/26/21), 322 So.3d 397, 405 (quoting *Capital One Bank (USA), NA v. Sanches*, 2013-0003, p. 6 (La. App. 4 Cir. 6/12/13), 119 So.3d 870, 873-74). It "encompasses only those facts which the affiant saw, heard or perceived with his [or her] own senses." *Id.*

*Hernandez v. Northland Ins. Co.*, 2024-0271, p. 8 (La. App. 4 Cir. 11/17/24), 402 So.3d 8, 14 (citation omitted).

In the present case, the district court ruled that it would not consider any aspects of Mrs. Ordonez's affidavit that were not based on her personal knowledge or considered to be opinion-based statements regarding the potential cause of the accident due to the fact that she was not qualified as an expert in the area of construction and design. Based on the aforementioned precepts, we find no error in the district court's ruling striking those aspects of Mrs. Ordonez's affidavit that are inadmissible pursuant to La. C.C.P. art. 967.

### *Actual and/or Constructive Knowledge*

On appeal, the Ordonezes assert the district court erred in granting SSW's motion for summary judgment because they provided evidence – in the form of an

affidavit, photographs, inspector reports, and depositions – sufficient to establish their ability to meet the burden of proof at trial. Summarily, the Ordonezes' petition claims that SSW is liable to them for allowing an unreasonably dangerous condition to exist in its building via the alleged rusted second-floor balcony handrails. In Louisiana, the source of premise liability is found in La. C.C. arts. 2317[2], 2317.1[3], and 2322[4], which impose a duty on the owner or person having custody of immovable property to maintain such property in a reasonably safe condition. Louisiana Civil Code Article 2322, in particular, pertains to damage caused by a building's ruin and "specifically modifies liability under Article 2317 with respect to the owner of a ruinous building or defective component part of that building." *Bercy*, 2020-0583, p. 6, 315 So.3d at 346 (citations omitted). In order to recover from a building owner, a plaintiff must prove the following: (1) the owner's ownership of the building; (2) that the owner knew, or in the exercise of reasonable care, should have known of the ruin or defect; (3) that the damage could have been

---

[2] Louisiana Civil Code Article 2317 provides, "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."

[3] Louisiana Civil Code Article 2317.1 provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

[4] Louisiana Civil Code Article 2322 provides:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

prevented by the exercise of reasonable care; (4) that the owner failed to exercise such reasonable care; and (5) causation. *Id.* at p. 6, 315 So.3d at 346-47. A plaintiff's inability to prove any one of these factors will defeat his or her negligence claim. *Trayanoff v. Omni Hotels Mgmt. Corp.,* 2024-0366, p. 8 (La. App. 4 Cir. 12/10/24), 408 So.3d 221, 227 (citations omitted).

The dispositive factor pertinent in this case is whether there is a genuine issue of material fact concerning SSW's actual or constructive knowledge of the alleged defective balcony handrails prior to Mr. Ordonez's accident. This Court, in *Russell v. Forest, Isle, Inc.*, explained:

> Constructive notice is defined as 'the existence of facts which infer actual knowledge.' Constructive notice can be found if the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury.

2018-0602, p. 5 (La. App. 4 Cir. 12/5/18), 261 So.3d 47, 50. (citations omitted). "The concept of constructive knowledge imposes a reasonable duty to discover apparent defects in things under the defendant's garde." *Lotridge v. Abril,* 2007-1401, p. 5 (La. App. 4 Cir. 12/30/08), 3 So.3d 84, 88 (citation omitted). In premises liability cases, a plaintiff is required to show that the owner or custodian of the allegedly defective thing (or premises) knew, or in the exercise of reasonable care, should have known of the ruin, vice, or defect. "[I]t is the defendant's *awareness* of the dangerous condition of the property that gives rise to a duty to act." *Hill v. Hobby Lobby Store, Inc.*, 2019-89, p. 4 (La. App. 5 Cir. 10/2/19), 282 So.3d 333, 336 (citing *Oster v. Dep't of Transp. & Dev., State of La.*, 582 So.2d 1285, 1288 (La. 1991).

In support of its motion for summary judgment, SSW attempted to present evidence that the second-floor balcony handrails were not in need of repair,

7

immediate attention, or presented a safety issue. SSW submitted Drs. Stalder, St. Hilaire, and Womac's individual deposition testimonies, where each doctor admitted that he did not have personal knowledge of nor received notice of any potential defect, ruinous condition, or hazard associated with second-floor balcony handrails prior to Mr. Ordonez's accident. Moreover, during Dr. St. Hilaire's deposition, he stated that prior to the accident, he has personally leaned on this specific balcony and never noticed any instability with the balcony or its handrails. SSW also presented the inspection report it obtained prior to purchasing the Property. The summary section of the report identified areas of concern regarding the Property that would require immediate attention or could pose a potential safety issue to be considered prior to purchasing the Property. Notably, this summary section does not mention the second-floor balcony. Additionally, concerning the first-floor balcony, the inspector observed, "Some minor rotting was noted[,]" and the recommended task was "Repair. Clean. Paint." Conversely, regarding the second-floor balcony, the inspector did not observe any apparent rotting nor was there a task recommendation to "repair."

However, the inspector made the following notation regarding the second-floor balcony:

> **PORCHES, DECKS, STAIRS, PATIOS AND BALCONIES \**
> **Handrails and guards**
> **Condition:** Open seams and rust were noted on the handrails
> **Location:** Front Left Side Second Floor
> **Task: Clean. Paint.**

As set forth in the report, SSW was advised that the handrails on the second-floor balcony contained "open seams" and "rust." Although the term "rotting" was not used to describe the condition of the second-floor balcony handrails, the report explicitly notes the presence of "open seams" and "rust" on the handrails. This fact

demonstrates SSW's constructive knowledge as it was made aware of the condition of the handrails, prior to the accident, and had a duty to cure these defects.

Additionally, the Ordonezes submitted photographs of the second-floor balcony at the Property taken by Mrs. Ordonez after the accident and her accompanying affidavit in opposition to the motion for summary judgment. These photographs depicting rust on the underside of the handrails creates an inference that such a condition would have been apparent before Mr. Ordonez's accident. At a minimum, the photographs create a presumption that one of the defects, "rust" on the handrails, existed for a considerable period of time and would have been discovered through SSW's exercise of ordinary care and diligence. The photographs coupled with the inspection report that mentions "open seams" and "rust" creates a genuine of material fact as to whether SSW had constructive notice of the defective handrails. Therefore, the Ordonezes produced factual support sufficient to establish the existence of a genuine issue of material fact concerning SSW's constructive knowledge of defects with the second-floor balcony handrails.

Based on our *de novo* review of the record before this Court, we conclude that there is a genuine issue of material fact regarding SSW's knowledge of an allegedly defective condition in the second-floor balcony railing or the Property where Mr. Ordonez was injured, and that SSW is not entitled to summary judgment as a matter of law. Accordingly, the district court erred in granting summary judgment in favor of SSW.

**DECREE**

For the foregoing reasons, we reverse the district court's January 13, 2025 judgment granting SSW's motion for summary judgment and remand the matter to the district court for further proceedings.

**REVERSED AND REMANDED**